IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ONITA ANN FOSTER, § | |
| PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:16-CV-961-A |
| § | |
| CAROLYN W. COLVIN, § | |
| ACTING COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Plaintiff Onita Ann Foster ("Foster") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act ("SSA"). In 2013, Foster applied for DIB and SSI, alleging her disability began on January 1, 2009. (Transcript ("Tr.") 28, 194-214.) After her applications were denied initially and on reconsideration, Foster requested a hearing before an Administrative

1

Law Judge ("ALJ"). (Tr. 28, 137-54.) The ALJ held a hearing on December 17, 2014 and issued an unfavorable decision on March 9, 2015. (Tr. 25-43, 84-111.) Thereafter, on July 12, 2016, the Appeals Council denied Foster's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 14-17.) Foster subsequently filed this civil action seeking review of the ALJ's decision.

### I. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or

combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long

as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II.   ISSUES

In her brief, Foster presents the following issue:

A. Whether the ALJ erred by failing to develop the record as to the nature and extent of Plaintiff's limitations and by formulating a residual functional capacity ("RFC") based only on his lay analysis of the medical record.[1]

(Plaintiff's Brief ("Pl.'s Br.") at 4, 8-16.)

## III.   ALJ DECISION

In his March 9, 2015 decision, the ALJ found that Foster met the insured status requirements of the SSA through June 30, 2012 and that Foster had not engaged in substantial gainful activity after January 1, 2009, the alleged onset date of Foster's disability. (Tr. 29-31.) The ALJ further found that Foster had the following severe combination of impairments: "hepatitis C, hypertension, carpal tunnel syndrome, asthma, and adjustment disorder with

---

[1] Plaintiff also identifies several subparts to this main issue, which the Court will analyze with the main issue. (*See* Pl.'s Br. at 4, 8-16.)

depression."[2] (Tr. 31.) Next, the ALJ held that Foster did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 33-34.) As to Foster's RFC, the ALJ stated:

> Ms. Foster has the residual functional capacity to lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk (individually or in combination) throughout an 8-hour workday; and otherwise perform the full range of medium work, as defined in 20 CFR 404.1567(c) and 416.967(c).

(Tr. 34 (emphasis omitted).)

Next, the ALJ found that Foster had no past relevant work but, based on the Medical-Vocational Guidelines ("GRIDS"), there were a significant number of jobs in the national economy that she could perform. (Tr. 38-39.) Consequently, the ALJ concluded that Foster was not disabled. (Tr. 39.)

## IV. DISCUSSION

### A. New Evidence Submitted to ALJ After Hearing

The main argument raised in Foster's brief is that the ALJ failed to properly develop the record with respect to the nature and extent of Foster's limitations by formulating an RFC based only on his lay analysis of the medical record. (Pl.'s Br. at 8.) In support of this argument, Foster states:

> For the purposes of the issues raised below, the record contains several critical pieces of evidence. The record includes several opinions from Agency non-examining reviewers at both the initial and reconsideration levels. Tr. 112-117; 119-125; 127-133. The record as reviewed at that time includes only medical exhibit 1F (Tr. 282-374). Tr. 128-29. Subsequently, Plaintiff submitted an additional 174 pages of medical records. Tr. 375-569. These records were

---

[2] The ALJ stated, "I stress in this case I found that Ms. Foster has at least one 'severe' impairment and so has a 'severe' combination of impairments, not that each impairment individually is 'severe.'" (Tr. 31, n.1.)

5

never reviewed by any medical source. They include testing diagnosing severe hearing loss, Tr. 456; 536, and limitations related to Plaintiff's carpal tunnel syndrome. Tr. 389; 455. Otherwise, the evidence relevant to Plaintiff's assignments of error is set forth in the appropriate argument sections below.

. . . .

To briefly preview Plaintiff's argument in this case, "the logical bridge" between the medical evidence and the ALJ's RFC for a full range of medium work was never built. The <u>only</u> medical opinions of record are those of the Agency's non-examining reviewers, who had noted insufficient evidence to find Plaintiff's physical impairments severe. An additional 174 pages of medical evidence was subsequently submitted to the ALJ, however, which was the ALJ's basis for rejecting this opinion evidence. Tr. 37. To be clear at the outset, Plaintiff does not suggest that an ALJ may not properly reject medical opinion evidence on this basis; in fact, Plaintiff *agrees* with this finding by the ALJ. The reality is, however, that the ALJ then failed to build the required "logical bridge" between the RFC for the full range of "medium work" and the additional evidence, which demonstrates "severe hearing loss" in addition to limited range of motion in her wrist and ongoing depression, anxiety and insomnia.

The ALJ's vague findings that Plaintiff had a "combination" of impairments that were severe and "at least one severe impairment" but "not that each impairment is individually severe" compounds this error, as well as the ALJ's generalized statement that he "considered all of the claimant's impairments both "severe" and "nonsevere" in deciding the case. Tr. 31. The evidence plainly demonstrates that Plaintiff's impairments resulted in practical limitations that are not accounted for in the RFC finding, exacerbated by the fact that the RFC is based sheerly on the ALJ's lay analysis of the raw medical data.

. . . .

The claimant bears the burden of proving that she is disabled pursuant to the Act and regulations. 20 C.F.R. §§ 404.1520, 404.1512(a)-(c). However, this does not relieve the ALJ of his basic duty to ensure that the record is fully and fairly developed as to material issues, <u>even when a claimant is represented by counsel</u>. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.944, 404.1512(d). In short, ALJs are absolutely obligated to be *curious* about the nature and extent of a claimant's impairments and limitations. Here, the ALJ failed to exercise his duty to develop the record as to material issues, an error which can only be addressed by remanding the case for further proceedings.

> Specifically, the ALJ improperly formulated an RFC finding based on his lay analysis of the medical record. As Plaintiff will demonstrate, the record supports additional functional limitations that were not included in the ALJ's RFC. Therefore, the ALJ's RFC and step 5 denial is not supported by substantial evidence.

(Pl.'s Br. at 6-9 (footnotes omitted).)

Foster then argues, in essence, that the ALJ's reliance on the opinions of the State Agency Medical Consultants ("SAMCs"), who had never examined Foster and who reviewed medical records through only July 2013, was in error because there was very little medical evidence in the record at the time the SAMCs gave their opinions. (Pl.'s Br. at 9-10.) Foster claims that the ALJ incorrectly erred by formulating an RFC based only on his lay opinion and ignored the additional medical evidence Foster submitted to the ALJ after the hearing, including evidence that Foster suffered from "severe hearing loss" and was restricted in her ability to use her wrist due to carpal tunnel syndrome. (Pl.'s Br. at 11-13.) Foster states:

> Given the ALJ's rejection of the medical consultant's opinions due to insufficient evidence and the addition of critical new medical evidence into the record, the ALJ had numerous options other than engaging in lay analysis and speculation regarding Plaintiff's limitations. Very notably, the Agency (and subsequently, the ALJ) never requested that Plaintiff submit to a consultative examination. . . .
>
> If the ALJ wanted to consider denying [Foster's claims for SSI], then he needed to have a legitimate medical basis for doing so. Assuming, for the sake of argument, that a reasonable ALJ could have questions regarding Plaintiff's impairments or symptoms, or about the consistency of her statements regarding her disability with the underlying record, he had numerous options, *none of which were to decide the case based on lay analysis alone.* He could have arranged for a consultative examination, enlisted a review of the record and testimony by a medical expert, or even sent the entire file back to the Agency's non-examining consultants for review of the additional records. Instead, he did the one thing that is not permitted, namely rely upon his lay analysis of the raw medical data.

7

(Pl.'s Br. at 13-14 (internal citations omitted).) Foster further claims that the ALJ's errors in formulating the RFC and not accounting for all of her severe impairments, including her carpal tunnel syndrome, hearing loss, and depression, resulted in the ALJ incorrectly relying on the GRIDS at Step Five. (Pl.'s Br. at 15-16.)

In this case, Foster, as stated above, submitted 174 pages of additional evidence to the ALJ after the hearing but prior to the ALJ's decision.[3] A review of these records indicate that between approximately January 2014 and December 2014, Foster was treated for a variety of impairments, including right leg pain, carpal tunnel syndrome, depression, hepatitis, hypertension, and bronchospasm. (Tr. 375-548.) In May 2014, Christopher Gray, M.D. ("Dr. Gray") noted that Foster had a normal mood, affect, and behavior and exhibited "decreased range of motion (due to pain)" in her right wrist and left elbow. (Tr. 389.) Dr. Gray prescribed Foster gabapentin for her "likely median and/or ulnar neuropathy" and continued prescribing amitriptyline for her depression. (Tr. 389.) In June 2014, Foster was diagnosed with tympanic membrane perforation of the right ear and found to have hearing loss, tinnitus, and ear discharge. (Tr. 390-92.) In November 2014, Foster was again treated for carpal tunnel syndrome as Foster complained of "right hand numbness, tingling, and weakness." (Tr. 455.) Foster complained that the symptoms occurred every day and "last intermittently throughout the day." (Tr. 455.) The doctor noted that Foster's restricted activities included repetitive use patterns and heavy manual labor and that Foster had not had physical therapy for her symptoms. (Tr. 455.)

---

[3] Foster also submitted approximately 21 additional pages of medical records to the Appeals Council, after the ALJ's decision. (Tr. 549-569; see Tr. 109.) However, because Foster does not raise any arguments regarding these documents submitted to the Appeals Council, the Court will not address them.

Also, in November 2014, Amy Zahn ("Zahn"), an audiologist, performed an audiogram and found Foster to have right moderately severe mixed hearing loss with type B tympanogram and "left normal to moderate HFSNHL with type A tympanogram." (Tr. 456, 533.) Zahn diagnosed Foster with sensorineural hearing loss bilateral and unspecified otitis media. (Tr. 456, 532-34.) Dwight Evers Cramer, M.D. ("Dr. Cramer") reviewed the audiogram and stated, "Audiogram today revealed a left mild-to-moderate mid frequency and high frequency sensorineural hearing loss with a normal tympanogram and a right mild to severe mixed hearing loss with a flattened tympanogram." (Tr. 536.) Dr. Cramer further noted, "Exam of the right ear revealed a 4 mm anterior central tympanic membrane perforation with yellow crusting noted on the tympanic membrane." (Tr. 537.) Dr. Cramer diagnosed Foster with "[r]ight chronic otitis media." (Tr. 537.)

In this case, as stated above, the ALJ found that Foster had the RFC to perform the full range of medium work. (Tr. 34.) As to Foster's submission of the additional 174 pages of medical records, the ALJ, in his decision, stated:

> At the hearing, Ms. Hood stated all of Ms. Foster's relevant medical records were not in the file. I therefore kept the record open after the hearing to allow the submission of any additional, relevant medical records. Ms. Hood submitted Exhibits 3F and 4F subsequent to the hearing. The record is now closed. I had sufficient evidence to decide this case. In deciding this case, I read and considered all of the medical evidence in the file, including the additional medical records submitted after the hearing.

(Tr. 28.) In addition, the ALJ, as noted by Foster, specifically analyzed these additional records in his decision. (Tr. 36-37.) As to Foster's carpal tunnel syndrome, hearing problems, and depression, the ALJ analyzed these impairments throughout his decision, specifically noting,

9

*inter alia*, the following: (1) Foster's testimony that she: (a) suffers from depression and carpal tunnel syndrome, (b) she wears a brace on her right wrist, (c) the carpal tunnel syndrome is painful and makes it difficult to use her right hand, and (d) she was hospitalized for a short time in the past for depression (Tr. 34-35); (2) Foster, during a May 2013 examination, complained of discharge from her right ear with decreased hearing and a physical exam was "within normal limits in all areas, except for a hole in her right eardrum, with inflammation (Tr. 35); (3) an examination in January 2014 in which Foster was diagnosed with carpal tunnel and given a wrist brace (Tr. 36); (4) the examination in May 2014 with Dr. Gray in which Foster: (a) reported chronic pain in her right elbow, wrist, and forearm, (b) was found to have tenderness and decreased range of motion due to pain in her right elbow and wrist but with no swelling, effusion, or deformity, and (c) was prescribed Gabapentin for her wrist pain (Tr. 36): (5) an examination dated September 19, 2014 in which Masheika Jackson, D.O., noted that a physical examination of Foster was within normal limits in all body systems and provided a wrist brace to Foster for her right wrist (Tr. 36); (6) Dr. Cramer's examination in November 2014 in which an "audiogram revealed mild to moderate mid-frequency and high-frequency hearing loss in [Foster's] left ear and mild to severe mixed hearing loss in her right ear" and was prescribed Cipro (Tr. 37); and (7) medical evidence from April 2010 through November 2014 showing Foster had been occasionally treated for depression, prescribed medications, but generally had a normal mood, affect, and behavior (Tr. 31-32).

As to the opinion evidence in the record relating to Foster's depression, the ALJ stated:

> I gave considerable weight to the opinion of the State agency medical expert at the reconsideration determination.[4]  This opinion was credible and consistent with the longitudinal evidence.
>
> I gave little weight to the opinion of the State agency medical expert at the initial determination. That opinion was inconsistent internally. If there was insufficient evidence to determine the limitations imposed by Ms. Foster's impairment, it is not logical that the impairment could be considered "severe." Furthermore, this opinion was not well supported.

(Tr. 33 (footnote added).)

As to the opinion evidence in the record relating to Foster's physical impairments, the ALJ stated:

> As for the opinion evidence, the State agency medical experts at the initial and reconsideration determinations opined there was not sufficient evidence in the file to determine disability. The experts did note Ms. Foster had the medically determinable impairment of hypertension but that this was not "severe" (Exhibits 1A and 5A). These opinions were given limited weight. Evidence was submitted subsequent to the determinations that revealed the presence of medically determinable impairments of hypertension, hepatitis C, carpal tunnel syndrome, and asthma. It is evident these impairments are "severe" in combination and would cause some limitations in Ms. Foster's ability to function.
>
> . . . .
>
> Ms. Foster was diagnosed with carpal tunnel syndrome and was prescribed a wrist brace to use. However, as reflected consistently throughout the record, her musculoskeletal examinations were within normal limits. In May 2014, a physical examination revealed tenderness and decreased range of motion in her right upper extremity. However, after she was prescribed a wrist brace, Ms. Foster's remaining physical examination revealed no musculoskeletal abnormalities.

---

[4] In the reconsideration determination dated November 15, 2013, the SAMC noted that Foster had been diagnosed with depression but generally was found to have a normal mood and affect on examination. (Tr. 119-32.)

> I considered Ms. Foster's work history, which revealed very low earnings. This reflects she worked only sporadically prior to her alleged onset of disability date, which raises a question as to whether her continuing unemployment was actually due to her medical impairments. Additionally, Ms. Foster's alleged onset of disability date was unrealistic. There was no medical evidence of any debilitating symptoms at the time of her alleged onset of disability date. This eroded her credibility.
>
> After reviewing the evidence, I found that the combination of hepatitis C, hypertension, and carpal tunnel syndrome limits Ms. Foster to lifting, carrying, pushing, or pulling 50 pounds occasionally and 25 pounds frequently. She can sit, stand, or walk (individually or in combination) throughout an 8-hour workday and otherwise perform the full range of medium work.

(Tr. 37-38.)

As to Foster's depression, the ALJ gave considerable weight to the opinion of the SAMC at the reconsideration determination. (Tr. 33.) The ALJ found that such opinion was consistent "with the longitudinal evidence" in the record, including the new evidence submitted by Foster after the ALJ hearing. (Tr. 33, 35-38.) While Foster complains of this finding, a review of the new evidence submitted and considered by the ALJ supports the ALJ's findings that Foster's symptoms associated with her depression were generally stable and being treated with medication. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (impairments that reasonably can be remedied or controlled by medication or treatment are not disabling); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *see also* 20 C.F.R. §§ 404.1530, 416.930.

As to her carpal tunnel syndrome, the ALJ gave little weight to the opinions of the SAMCs at the initial and reconsideration determinations, finding that evidence submitted subsequent to these determinations revealed the presence of several medically determinable impairments, including carpal tunnel syndrome. (Tr. 37.) The ALJ noted that, while Foster had

been diagnosed with carpal tunnel syndrome, prescribed a wrist brace, and had tenderness and decreased range of motion in May 2014, there was no swelling, effusion, or deformity, and "remaining physical examinations revealed no musculoskeletal abnormalities." (Tr. 35-38.) The ALJ specifically mentioned Foster's carpal tunnel syndrome in limiting Foster to lifting, carrying pushing, or pulling 50 pounds occasionally and 25 pounds frequently. (Tr. 38.)

As to her hearing problems, the ALJ noted that she suffered from complaints of decreased hearing and a hole in her right eardrum. (Tr. 35.) In addition, the ALJ noted the examination performed by Dr. Cramer, the results of the audiogram, and that she was prescribed Cipro. (Tr. 37.)

The Court notes that the Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984). The ALJ's duty to fully and fairly develop the record may impose a duty to order an examination of the plaintiff or request additional evidence. *See* 20 C.F.R. §§ 404.1520b(b), 416.920b(b); *see also Brock*, 84 F.3d at 728. "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09–CV–156–Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'"

*Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220). "To show such prejudice a Plaintiff must present more than mere speculation." *Dale v. Astrue*, No. 83-3542, 2012 WL 2864403, at *7 (July 11, 2012).

"Procedural perfection in administrative proceedings is not required' as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988); *see Penalver v. Barnhart,* No. SA–04–CA–1107–RF, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment- he need not discuss all supporting evidence or evidence rejected."). As noted above, the final responsibility for the determination of an individual's RFC and the ultimate question of whether an individual is "disabled" under the Act are issues reserved to the Commissioner. *See, e.g., Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Ripley v. Charter*, 67 F.3d 552, 557 (5th Cir. 1995) (finding that the ALJ is responsible for determining a claimant's RFC).

In this case, it is clear that the ALJ properly considered all the medical evidence in the record, including the additional 174 pages of evidence Foster submitted to the ALJ after the hearing but prior to the ALJ's decision. While Foster claims that the ALJ erred by not having the entire record analyzed by a medical source to obtain new medical opinions on the impact of all of Foster's impairments on her ability to function in the workplace, the Court disagrees as "[a]n ALJ may properly reject all or portions of a physician's opinion when the overall evidence supports a contrary conclusion." *Cortez v. Astrue*, No. 4:10-CV-741-Y, 2011 WL 3701936, at

*5 (N.D. Tex. Aug. 5, 2011) (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). In this case, the evidence viewed as a whole supports the ALJ's RFC and disability determination.

Moreover, the ultimate decision as to disability rests solely with the ALJ. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Cortez*, 2011 WL 3701936, at *5. In this case, the ALJ adequately explained the reasoning for his RFC determination and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") Furthermore, even assuming that the ALJ had a duty to further develop the record, Foster has failed to demonstrate that he was prejudiced by the ALJ's failure to do so. The new evidence submitted after the hearing before the ALJ shows that Foster suffered from depression, hearing loss, and carpal tunnel syndrome. However, such evidence does not indicate that these impairments would impact Foster's ability to work more than already considered by the ALJ and Foster has not presented evidence indicating otherwise. Consequently, the Court concludes that the ALJ did not err and remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 24, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 10, 2017.

                                        JEFFREY L. CURETON
                                        UNITED STATES MAGISTRATE JUDGE

JLC/knv